IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SIGNATURE STYLE, INC., a Nebraska Corporation, d/b/a SIGNATURE STYLE JEWELRY,<br><br>   Plaintiff and counterclaim defendant,<br><br>vs.<br><br>SCOTT ROSELAND, d/b/a EMPIRE CHAMPIONSHIP RINGS,<br><br>   Defendant and counterclaimant. | 4:19-CV-3089<br><br>MEMORANDUM AND ORDER |

This dispute arose after defendant Scott Roseland terminated his employment with plaintiff Signature Style, Inc. and started a competing business, Empire Championship Rings. Signature Style alleges that Roseland breached both a Confidentiality/Nondisclosure Agreement (filing 1-2 at 16) and a Noncompete Agreement (filing 1-2 at 17) by taking customer records, design and supplier information, other proprietary information, and trade secrets and using them to establish Empire.

This matter is before the Court on Roseland's partial motion to dismiss (filing 5) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court will grant Roseland's motion in part and deny it in part.

## I. BACKGROUND

Signature Style is a Nebraska corporation that designs, manufactures and sells championship and class rings nationwide. Filing 1-2 at 1. Its principal

place of business is in Lincoln, Nebraska. Filing 1-2 at 1. Roseland worked for Signature Style from 2013 or 2014[1] until mid-February 2019, first as a sales representative and later a sales manager. Filing 1-2 at 2-3; filing 4 at 2-3. On September 10, 2018 Roseland signed a Confidentiality/Non-Disclosure Agreement and a Non-Compete Agreement as a condition of his continued employment with Signature Style. Filing 1-2 at 2; filing 4 at 2. In mid-February 2019, Roseland notified Signature Style he would be resigning and starting his own jewelry design and sales business. Filing 1-2 at 3; filing 4 at 3.

Roseland moved from Lincoln, Nebraska to Wichita, Kansas and started Empire. *See* filing 1-2 at 1-3, filing 4 at 1-3. Signature Style alleges that Roseland took confidential information including customer lists; pricing methods; and names and addresses of suppliers, vendors, and other third parties doing business with Signature Style. Filing 1-2 at 2-3, 18. Signature Style also alleges Roseland has used this confidential information to establish Empire in violation of the confidentiality agreement and noncompete agreement. Filing 1-2 at 3-4. Finally, Signature Style alleges that Roseland is soliciting former, current and prospective customers that Roseland "knew or otherwise developed a relationship with" while employed at Signature Style. Roseland admits that Empire competes with Signature Style, but denies that he took any confidential information. Filing 4 at 3.

Signature Style sued Roseland for (1) breach of contract, (2) accounting, (3) misappropriation of proprietary material, (4) breach of the Nebraska Trade Secrets Act, (5) breach of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), (6) unjust enrichment, and (7) injunctive relief. Filing 1-2 at 1-9.

---

[1] Signature Style alleges Roseland started work in approximately 2013 (filing 1-2 at 2) while Roseland alleges he started in December 2014 (filing 4 at 2). The difference is not material to this motion.

Roseland now moves to dismiss Signature Style's breach of contract, and UDTPA claims.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. See Twombly, 550 U.S. at 545. The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even

if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## III. DISCUSSION

### 1. BREACH OF CONTRACT

Roseland argues (1) the noncompete agreement is unenforceable as a matter of Nebraska law, and (2) the noncompete and confidentiality agreement should be considered as a single, inseverable agreement; so the invalidity of the noncompete agreement means the confidentiality agreement is also unenforceable.

### (a) Severability

The Court begins by addressing Roseland's second argument—that the noncompete and confidentiality agreements must be read together and are inseverable. Roseland says that "the [confidentiality] and non-compete covenants are part and parcel of the same overall employment agreement," and reasons that they were signed on the same date and were supported by the same consideration—continued employment. Filing 6 at 9. Roseland also notes

that the agreements have overlapping subject matter. Filing 6 at 9. So, Roseland argues, the noncompete may not be severed from the confidentiality agreement. Roseland relies primarily on *Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437 (2015) for its reaffirmation of the longstanding rule in Nebraska that courts may not sever portions of a covenant not to compete in order to make it enforceable. *Id.* at 441-42.

But Roseland's reliance is misplaced. In *Waadah*, the court was considering a noncompete provision that appeared in a larger franchise agreement, and provided, in relevant part:

> Franchisee . . . agrees that, [during the term of the Agreement and for 2 years after expiration or termination of the agreement, Franchisee shall not own or operate a competing business that operates or solicits business]: (i) within the Territory of this Agreement; and (ii) for a period of one (1) year commencing upon expiration or termination of this Agreement (regardless of the cause for termination), in any other territory in which a Jani–King franchise operates.

*Id.* at 439. The court held that the second restriction that prevented a franchisee from operating a competing business in any territory where a Jani-King franchise operated was unenforceable because Jani-King operated in multiple states and internationally, and therefore the provision lacked reasonable geographic limits. *Id.* at 444. And the court further held that the 1 year restriction was not severable from the 2 year restriction that was limited to the territory of the agreement and that the entire noncompete provision was unenforceable. *Id.* at 441-42.

Here Roseland separately signed and dated two individual agreements, the confidentiality agreement and the noncompete agreement. Even assuming, without deciding, that the two agreements should be considered as a single contract, *Waadah* did not hold that an invalid covenant not to compete in a contract cannot be severed from otherwise valid provisions. Rather, the *Waadah* court refused to sever an unenforceable *clause* in a covenant not to compete, and thus held the entire covenant invalid. It did not deem the larger franchise agreement unenforceable. *Waadah* is consistent with other cases holding that unenforceable portions of covenants not to compete are inseverable, but still enforcing the broader contracts in which the covenants appear. *See H & R Block Tax Servs., Inc. v. Circle A Enters., Inc.*, 693 N.W.2d 548 (Neb. 2005); *Prof'l Bus. Servs. Co. v. Rosno*, 680 N.W.2d 176 (Neb. 2004). And nondisclosure provisions contained in contracts with unenforceable covenants not to compete may still be enforced. *See H & R Block*, 693 N.W.2d at 551-52.

Thus, even if the confidentiality agreement and noncompete agreement are read together as a single employment contract, the confidentiality agreement may still be enforceable regardless of whether the noncompete provision is valid.

(b) Validity of the Noncompete Agreement

Interpretation of a contract is a question of law. *Rosno*, 680 N.W.2d at 184. In Nebraska, a partial restraint on trade such as a covenant not to compete is valid if (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive to the employee. *Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 127 (Neb. 2014).

- 6 -

Roseland does not argue the noncompete agreement is injurious to the public interest or unduly harsh and oppressive. Filing 6 at 6-8. So the only issue before the court is whether the noncompete agreement is not greater than reasonably necessary to protect Signature Style's legitimate business interest.

> Legitimate interests of an employer which may be protected from competition include: the employer's trade secrets which have been communicated to the employee during the course of employment; confidential information communicated by the employer to the employee, but not involving trade secrets, such as information on a unique business method; an employee's special influence over the employer's customers, obtained during the course of employment; contacts developed during the employment; and the employer business's development of goodwill.

*Gaver*, 856 N.W.2d at 130. A covenant contained in an employment contract aimed at preventing a former employee from unfairly appropriating customer goodwill is valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and had personal contact. *H & R Block*, 693 N.W.2d at 554; *Polly v. Ray D. Hilderman & Co.*, 407 N.W.2d 751, 756 (Neb. 1987). The covenant must also contain reasonable temporal and geographical restrictions. *Gaver*, 856 N.W.2d at 128.

The noncompete agreement between Signature Style and Roseland, in relevant part, provides:

> You are prohibited from approaching any prospects that were developed while you were in business dealings with Signature

> Style Jewelry. This agreement will remain in force, even after you leave your employment with Signature Style Jewelry for 36 months. This agreement also prohibits you from setting up your own competing business within 50 miles of any Signature Style Jewelry, for a period of 3 years.

Filing 6 at 3. Roseland argues that the provision purportedly prohibiting him from setting up a competing business is overly broad and unenforceable because it restricts activities beyond the clients and accounts with whom Roseland actually did business and had personal contact. The Court agrees.

Nebraska courts are generally more willing to uphold promises to refrain from competition in the context of the sale of goodwill as a business asset than those made in connection with contracts of employment. *Waadah*, 861 N.W.2d at 443. So, for instance, a business owner that sells his business as a going concern—presumably including the goodwill he has built up in the business as a intangible asset—may be precluded from establishing a competing business and reclaiming the goodwill he sold. But this is not such a case.

And while an employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, the employer is not entitled to protection against ordinary competition from a former employee. *Gaver*, 856 N.W.2d at 130; *Aon Consulting v. Midlands Fin. Benefits*, 748 N.W.2d 626, 639 (Neb. 2008). Here, Signature Style sought to prevent Roseland from setting up a competing business within a 50 mile radius of any of its stores for a period of 3 years. That provision is unenforceable as a matter of law because it does not restrict Roseland from *unfairly* competing by soliciting customers with whom he actually did business, but rather purports to prevent him from competing *at all*.

As previously discussed, a court may not reform an invalid covenant not to compete to make it enforceable. *See Waadah,* 861 N.W.2d at 441-42. Therefore, the entirety of the noncompete agreement (filing 1-2 at 17) is unenforceable as a matter of law. And because the noncompete agreement is unenforceable, Signature Style's breach of contract claim under the noncompete will be dismissed.

(c) Breach of the Confidentiality Agreement

But because the confidentiality agreement is severable, the Court must determine whether Signature Style has stated a claim for breach of the confidentiality agreement.

To recover for breach of contract, a plaintiff must plead and prove the existence of a promise, a breach of that promise, damages, and satisfaction of any conditions precedent to the defendant's duty to perform. *Henriksen v. Gleason,* 643 N.W.2d 652, 658 (Neb. 2002). The burden of proving the existence of an employment contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Blinn v. Beatrice Cmty. Hosp. & Health Ctr., Inc.,* 708 N.W.2d 235, 245 (Neb. 2006). The language which forms the basis of an alleged contract, whether oral or written, must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability. *Id.*

Here, Signature Style has pled the existence of a binding agreement. Signature Style alleges (and Roseland concedes) that on September 10, 2018 Roseland signed the confidentiality agreement in consideration for his continued employment with Signature Style. Filing 1-2 at 4; filing 4 at 2. Roseland breached that agreement, according to Signature Style, when he took, refused to return, and used confidential and proprietary information after

he ended his employment with Signature Style. Filing 1-2 at 6-7. And those allegations, if true, would support Signature Style's breach of contract claim.[2]

Thus, the Court concludes that Signature Style has stated a claim for breach of the confidentiality agreement and will deny Roseland's motion to dismiss as to that claim.

2. VIOLATION OF NEBRASKA DECEPTIVE TRADE PRACTICES ACT

Signature Style claims that Roseland engaged in practices that violate the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.* (UDTPA). Filing 13 at 17-18.

> A person engages in deceptive trade practices when, in the course of his or her business, vocation, or occupation, he or she:
> . . .
> (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . .

Neb. Rev. Stat. § 87-302(a)(2)-(3). Specifically, Signature Style alleges that Roseland produced, manufactured, and sold class and championship rings of the same or similar design as those of Signature, thereby causing a likelihood

---

[2] It is worth noting that Roseland offers no arguments that the confidentiality agreement is unenforceable in and of itself. All of Roseland's arguments regarding invalidity rest on the confidentiality agreement being inseverable from the noncompete agreement.

of confusion or misunderstanding of the type prohibited by the UDTPA. Filing 1-2 at 10.

Roseland relies on *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 591-92 (Neb. 2008) for the proposition that "to establish a violation of the UDTPA, there must have been a representation regarding the nature of goods or services and the representation must have been for characteristics or benefits that the goods or services did not have." Filing 6 at 10-11. But *Stenberg* was interpreting and applying §87-302(a)(5), and Signature Style alleges violation of subsections (a)(2) and (a)(3). So, *Stenberg* is inapplicable.

Roseland also argues that Signature Style has merely made a conclusory assertion that confusion or misunderstanding may result from Roseland's competition through Empire and therefore has failed to state a claim under Rule (8)(a). Filing 6 at 11-12. But Signature Style has alleged that Roseland had access to ring design information, supplier and vendor information, manufacturer details, marketing plans and other proprietary information about Signature Style's business. Filing 1-2 at 4. Signature Style claims that Roseland took that proprietary information in February 2019 when he terminated his employment and has refused to return it. Filing 1-2 at 5. And Roseland, according to Signature Style, has been using that proprietary information to manufacture and sell class and championship rings of same or similar design and features as Signature Style. Filing 1-2 at 5-6. So, Signature Style claims that Roseland manufacturing and selling virtually the same product under the Empire brand has and is likely to cause confusion or misunderstanding as barred by the UDTPA. Filing 1-2 at 10.

The Court finds that Signature Style has alleged facts, taken as true, that establish a claim for relief under the UDTPA § 87-302(a)(2) and (3). It is

certainly plausible that if Roseland has taken Signature Style's proprietary information and is using it to produce identical or virtually identical rings, that there would be a likelihood of confusion and misunderstanding among consumers. Discovery will reveal whether or not Signature Style can actually produce evidence as to its claim. So, Roseland's motion to dismiss will be denied as to Signature Style's UDTPA claim.

IT IS ORDERED:

1. Roseland's partial motion to dismiss Signature Style's complaint (filing 5) is granted in part and denied in part.

2. Signature Style's claim for breach of contract arising from the Noncompete Agreement (filing 1-2 at 17) is dismissed.

Dated this 6th day of January, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge